FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 24, 2020

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

TRAVIS WAYNE P.,

    Plaintiff,

    v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

No.  2:18-CV-00388-RHW

**ORDER GRANTING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT**

Before the Court are the parties' cross-motions for summary judgment. **ECF Nos. 8, 9**. Plaintiff brings this action seeking judicial review pursuant to 42 U.S.C. § 405(g) of the Commissioner of Social Security's final decision, which denied his application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401-434, and his application for supplemental security income under Title XVI of the Act, 42 U.S.C. §1381-1383F. *See* Administrative Record (AR) at 1-6, 12-31. After reviewing the administrative record and briefs filed by the parties, the Court is now fully informed. For the reasons set forth below, the

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 1

Court **GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment.

## I.    Jurisdiction

Plaintiff filed his Title II application for disability insurance benefits on February 12, 2013. AR 15, 246-252. He filed his Title XVI application for supplemental security income on November 6, 2014. *See* AR 15, 253-58. In both applications, he alleged disability beginning on September 1, 2005.[1] AR 246, 253. Plaintiff's applications were initially denied on August 28, 2015, *see* AR 140-42, 143-46, and on reconsideration on October 5, 2015. *See* AR 153-56, 157-160. On October 8, 2015, Plaintiff filed a request for a hearing. AR 161-62.

Administrative Law Judge ("ALJ") Jesse K. Shumway held hearings on March 16, 2017 and August 16, 2017. AR 32-71, 72-99. On November 20, 2017, the ALJ issued a decision concluding that Plaintiff was not disabled as defined in the Act and was therefore ineligible for disability benefits or supplemental security income. AR 12-31. On November 2, 2018, the Appeals Council denied Plaintiff's request for review, AR 1-6, thus making the ALJ's ruling the final decision of the Commissioner. *See* 20 C.F.R. § 404.981. On December 18, 2018, Plaintiff timely

---

[1] However, for claims under Title XVI, benefits are not payable prior to the application's filing date. *See* 20 C.F.R. § 416.335.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** ~ 2

filed the present action challenging the denial of benefits. ECF No. 1. Accordingly, his claims are properly before this Court pursuant to 42 U.S.C. § 405(g).

## II. Five-Step Sequential Evaluation Process

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant shall be determined to be under a disability only if the claimant's impairments are so severe that the claimant is not only unable to do his or her previous work, but cannot, considering claimant's age, education, and work experience, engage in any other substantial gainful work that exists in the national economy. 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Step one inquires whether the claimant is presently engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b). Substantial gainful activity is defined as significant physical or mental activities done or usually done for profit. 20 C.F.R. §§ 404.1572, 416.972. If the claimant is engaged in substantial activity, he or she is not entitled to disability benefits. 20 C.F.R. §§ 404.1571, 416.920(b). If not, the ALJ proceeds to step two.

Step two asks whether the claimant has a severe impairment, or combination of impairments, that significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). A severe impairment is one that has lasted or is expected to last for at least twelve months, and must be proven by objective medical evidence. 20 C.F.R. §§ 404.1508-09, 416.908-09. If the claimant does not have a severe impairment, or combination of impairments, the disability claim is denied and no further evaluative steps are required. Otherwise, the evaluation proceeds to the third step.

Step three involves a determination of whether one of the claimant's severe impairments "meets or equals" one of the listed impairments acknowledged by the Commissioner to be sufficiently severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526 & 416.920(d), 416.925, 416.926; 20 C.F.R. § 404 Subpt. P. App. 1 ("the Listings"). If the impairment meets or equals one of the listed impairments, the claimant is *per se* disabled and qualifies for benefits. *Id.* If the claimant is not *per se* disabled, the evaluation proceeds to the fourth step.

Step four examines whether the claimant's residual functional capacity enables the claimant to perform past relevant work. 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f). If the claimant can still perform past relevant work, the claimant is not entitled to disability benefits and the inquiry ends. *Id.*

Step five shifts the burden to the Commissioner to prove that the claimant is able to perform other work in the national economy, taking into account the claimant's age, education, and work experience. *See* 20 C.F.R. §§ 404.1512(f), 404.1520(g), 404.1560(c) & 416.912(f), 416.920(g), 416.960(c). To meet this burden, the Commissioner must establish that (1) the claimant is capable of performing other work; and (2) such work exists in "significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2); 416.960(c)(2); *Beltran v. Astrue*, 676 F.3d 1203, 1206 (9th Cir. 2012).

### III.    Standard of Review

A district court's review of a final decision of the Commissioner is governed by 42 U.S.C. § 405(g). The scope of review under this section is limited, and the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1144, 1158-59 (9th Cir. 2012) (citing § 405(g)). In reviewing a denial of benefits, a district court may not substitute its judgment for that of the ALJ. *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). When the ALJ presents a reasonable interpretation that is supported by the evidence, it is not the role of the courts to second-guess it. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). Even if the evidence in the record is susceptible to more than one rational interpretation, if inferences reasonably drawn from the record support the ALJ's decision, then the

court must uphold that decision. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012); *see also Thomas v. Barnhart*, 278 F.3d 947, 954-59 (9th Cir. 2002).

## IV.    Statement of Facts

The facts of the case are set forth in detail in the transcript of proceedings and only briefly summarized here. Plaintiff was 20 years old on the alleged date of onset (for purposes of his Title II application) and 29 years old when he filed his Title XVI application, which the regulations both define as a younger person. AR 101; *see* 20 C.F.R. §§ 404.1563(c), 416.963(c). He obtained his GED and can read, write, and communicate in English. AR 290, 292. He has a history of abusing narcotics and marijuana. AR 61-62, 65, 134, 1465, 1529. He has past work as a packaging machine operator, construction worker, janitor, and telemarketer. AR 66-67, 299-303.

## V.    The ALJ's Findings

The ALJ determined that Plaintiff was not under a disability within the meaning of the Act at any time from September 1, 2005 (the alleged onset date) through November 20, 2017 (the date the ALJ issued his decision). AR 16, 25.

**At step one**, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. AR 17.

At step two, the ALJ found that Plaintiff had the following severe impairments: recurrent nephrolithiasis, lumbar degenerative disc disease, and chronic pain syndrome. AR 17.

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. § 404, Subpt. P, Appendix 1. AR 18.

At step four, the ALJ found that Plaintiff had the residual functional capacity to perform light work as defined in 20 C.F.R. §§ 404.1567(b), 416.967(b), albeit with some additional limitations. AR 18. The ALJ found that Plaintiff could frequently balance, stoop, and kneel and occasionally climb stairs, ramps, ladders, ropes, and scaffolds. AR 18. He could not have concentrated exposure to extreme cold or any exposure to hazards, such as unprotected heights or moving mechanical parts. AR 18. He would be absent from work eight to ten days per year. AR 18. Given these limitations, the ALJ found that Plaintiff was unable to perform any past relevant work. AR 23-24.

At step five, the ALJ found that in light of Plaintiff's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that he could perform. AR 24-25. These included the jobs of an electronics worker, a small products assembler, and an office helper. AR 25.

## VI. Issue for Review

The sole issue Plaintiff raises is whether the ALJ properly evaluated and weighed the medical opinion evidence. ECF No. 8 at 11-20.

## VII. Discussion

### A. The ALJ did not Err in Weighing the Medical Opinion Evidence

Plaintiff argues the ALJ erred in weighing the medical opinions from four providers: (1) non-examining physician Joselyn Bailey, M.D.; (2) treating physician Francis Goodman, M.D.; (3) non-examining physician Judy Panek, M.D.; and (4) non-examining physician Olegario Ignacio, M.D. ECF No. 8 at 11-20.

### 1. Legal standards

The Social Security Act's implementing regulations distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant but who review the claimant's file (non-examining physicians). *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001); *see* 20 C.F.R. §§ 404.1527(c)(1)-(2), 416.927(c)(1)-(2). Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a non-examining physician's. *Holohan*, 246 F.3d at 1202.

If a treating or examining doctor's opinion is contradicted by another doctor's opinion—as is the case here—an ALJ may only reject it by providing "specific and legitimate reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). An ALJ satisfies this standard by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his [or her] interpretation thereof, and making findings." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). In contrast, an ALJ fails to satisfy this standard when he or she "rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his [or her] conclusion." *Id.* at 1012-13.

## 2.    Non-examining physician Joselyn Bailey, M.D.

Dr. Bailey reviewed Plaintiff's file and testified as an expert at the hearing. AR 37-52. She stated that Plaintiff's primary medical issue was severe kidney stones. AR 38. She outlined his treatment history, which included lithotripsy, surgery, and frequent emergency room visits. AR 38-40. She testified that Plaintiff's most severe symptoms would be associated with an obstruction, an infection, or blood in Plaintiff's urine. AR 42-43. The ALJ asked Dr. Bailey how

often these conditions occurred based on objective evidence in the medical records. AR 45. Dr. Bailey was unable to provide a straight answer. AR 45.

Dr. Bailey further testified that she did not see evidence of drug-seeking behavior. AR 47. She did not know if Plaintiff ever saw a pain specialist or if he had a pain contract. AR 40, 48. The ALJ attempted to question Dr. Bailey about Plaintiff's drug-seeking behavior, but Dr. Bailey did not have the records the ALJ was referencing and had not seen them. AR 49-50.

Regarding ability to work, Dr. Bailey testified that someone with Plaintiff's symptoms "just can't do any kind of sustained work if you're always having pain and running to the doctor or the emergency room." AR 50. She stated that if Plaintiff did "not have the stones, he would be fine . . . there's nothing wrong with the rest of him." AR 50. However, she believed that due to his kidney stones, he would be absent from work four times per month. AR 51. She based this number "on the frequency that he's had to go to the emergency room." AR 51. She noted that he went to the emergency room six times in 2008, six times in 2010, eight times in 2011, four times in 2015, and six times in 2016. AR 51. She stated he was "at the emergency room half his life." AR 51. After the hearing, Dr. Bailey completed interrogatories in which she opined that Plaintiff equaled the criteria for Listing "9.03." AR 1667-68.

The ALJ assigned little weight to Dr. Bailey's opinion, reasoning that (1) she demonstrated a lack of familiarity with the Social Security regulations, and (2) she demonstrated a lack of familiarity with the record. AR 22. Plaintiff challenges both rationales.

### i.      Lack of familiarity with Social Security regulations

Dr. Bailey opined in the written interrogatories that Plaintiff equaled the criteria for Listing "9.03." AR 1667-68. The ALJ found that this indicated a lack of competence with respect to the Social Security program because "there is no such thing as Listing 9.03." AR 22. What Dr. Bailey meant to write was "Listing 9.00(B)(3)." *See* 20 C.F.R. § 404 Subpt. P. App. 1, 9.00. Plaintiff is correct that this clerical error was not a legitimate reason to discount her opinion. *See Busby v. Berryhill*, 2019 WL 1332761, at *12 (N.D. Cal. 2019).

### ii.      Lack of familiarity with the record

The ALJ acknowledged Dr. Bailey's opinion that Plaintiff could not sustain competitive employment due to his frequent emergency room visits. AR 22. However, the ALJ found that Plaintiff's frequent ER visits were attributable to drug seeking rather than a legitimate need for treatment. AR 22. The ALJ noted that Plaintiff regularly asked for early narcotic refills, sometimes three to five days after he was prescribed 56 hydrocodone tablets. AR 1089, 1090, 1091, 1092, 1099, 1104, 1108, 1123, 1124, 1125, 1126, 1128, 1129, 1130, 1131, 1140, 1141, 1155.

He repeatedly told medical providers that his medication had been stolen. AR 783, 1087, 1089. He requested narcotics when his kidney stones were not symptomatic, and his treating urologist advised that she would not prescribe narcotics unless there was evidence of an obstructive stone. *See* AR 1471. At one point, she told him that she would no longer prescribe him pain medication. AR 1094. Plaintiff then went to a pharmacy and attempted to fill one of her old Percocet prescriptions. AR 1094. The urologist had to intervene to stop the pharmacy from filling the prescription. AR 1094.

The ALJ also noted that Plaintiff would request narcotics from one medical provider but not disclose that he was already being prescribed narcotics from others. AR 1095, 1140, 1192. This violated the pain contracts between Plaintiff and his pain specialists and, as a result, multiple pain specialists stopped treating Plaintiff. *E.g.*, AR 54-55, 431, 500, 1192, 1531, 1537. When pharmacies refused to fill these duplicate prescriptions, Plaintiff would call the providers "combative and angry[,] demanding" that they override the pain contract and release the medication. AR 1192; *see also* AR 1095, 1115, 1140. The clinic nurses noted that Plaintiff seemed "very familiar with how prescriptions work and with normal clinic hours," which they found "suspicious." AR 1192. Plaintiff would then tell his providers that if they did not release the medications, he would "have to go to the ER to get pain relief." AR 1140.

The ALJ also noted that Plaintiff would frequently alternate between emergency rooms at three different area hospitals.[2] AR 19, 54. By 2016, he relied solely on ERs for pain medication. *See* AR 1537 ("He repeatedly gave reasons why he does not get a PCP and only uses urgent cares and ER's."). On one occasion, Plaintiff went to the Sacred Heart emergency room complaining of pain due to kidney stones. AR 1113. The physician looked at the ultrasound report and noted that "[t]here was no mention of any specific stone causing any obstruction." AR 1114. Plaintiff "expressed disbelief" at this and argued to the doctor that the "radiology technician showed him the specific stone and how it was causing an obstruction." AR 1114. However, due to Plaintiff's pain, the doctor prescribed hydrocodone. AR 1114. The next day, Plaintiff went to Dr. Goodman stating he was in "extreme pain" and requested more medication. AR 1115.

The next week, Plaintiff went to the Holy Family emergency room complaining of pain due to kidney stones. AR 1117. The doctor administered Dilaudid. AR 1117. Immediately after receiving the medication, Plaintiff "made

---

[2] At the hearing, Plaintiff testified that he stopped going to Deaconess in 2013 or 2014 because they "kicked [him] out." AR 54-55. The ALJ then asked him to explain how there were records from Deaconess in 2016. AR 56. Plaintiff stated, "I have no idea." AR 56. Plaintiff then testified that he switched from Sacred Heart to Holy Family because he moved north. AR 56. The ALJ then asked him to explain the records from Sacred Heart that postdated his move. AR 57. Plaintiff responded, "I can't really remember like the dates and time [sic] that I went, because I've been – been to all of them so many times. It just depends on how they treat me." AR 57-58.

the decision he wanted to go home, but was not willing to wait and ultimately left before getting his written discharge instructions." AR 1117.

The record contains many additional instances in which Plaintiff sought care for kidney stone pain at various emergency rooms and was prescribed narcotics. AR 853, 918, 1111, 1118-1119, 1120, 1141-43, 1508-09, 1537, 1579-80, 1632, 1646. This was despite that the imaging on many of these occasions showed no obstructing stones or hydronephrosis.[3] AR 615, 628, 1059, 1142 ("no evidence of obstruction or hydronephrosis"), 1509 ("there is no evidence of any obstruction or hydronephrosis, so I advised him that there is no evidence of any stones in the ureter which is what causes the pain."), 1579 ("no obstructing stones in ureters or any hydroureter or hydronephrosis").

In light of this evidence, the ALJ reasonably questioned Dr. Bailey's familiarity with the record. AR 22. It contradicted her conclusion that "there was no evidence of drug-seeking behavior." AR 22. The ALJ also emphasized that he tried to question Dr. Bailey about this, but she did not have the relevant record, had not seen it, and "could not speak to it." AR 22. The ALJ also noted that Dr. Bailey was unable to address how often Plaintiff experienced an obstruction, an infection,

_____

[3] Hydronephrosis occurs when a kidney stone obstructs the ureter and causes water to back up into the kidney. AR 41-42.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 14**

or blood in his urine.[4] AR 22. Finally, the ALJ was skeptical of Dr. Bailey's opinion that Plaintiff would miss work four days per month due to his frequent emergency room visits. AR 22. The ALJ did not believe these were a reliable indicator of Plaintiff's true treatment needs, given the "substantial questions" surrounding his motivations for going to the ER. AR 22. This was a legitimate reason to discount Dr. Bailey's opinion. *See* 20 C.F.R. §§ 404.1527(c)(6), 416.927(c)(6) (in weighing medical opinions, ALJs will consider "extent to which a medical source is familiar with the other information in your case record"); *Bayliss*, 427 F.3d at 1217; *Cox v. Astrue*, 2012 WL 3862135, at *8 (D. Or. 2012).

Plaintiff does not substantively respond to this reasoning.[5] He asserts, without analysis or explanation, that "[t]he fact that Dr. Bailey . . . did not focus upon the appearance of drug seeking behavior [is] not a valid reason[] supported by substantial evidence to reject all of her opinions." ECF No. 8 at 14. Plaintiff's conclusory assertion, however, fails to demonstrate that the ALJ erred in assigning little weight to Dr. Bailey's opinion on this basis.

---

[4] Moreover, Dr. Bailey said she did not know whether Plaintiff ever saw a pain specialist or had a pain contract, despite both being discussed extensively throughout the record. AR 54-55, 431, 500, 1192, 1531, 1537.

[5] Plaintiff argues instead that Dr. Bailey's opinion deserved more weight because it: (1) was consistent with Dr. Goodman's opinion, and (2) was also consistent with an internet website that describes symptoms associated with kidney stones. ECF No. 8 at 14-16. However, these are not the reasons the ALJ actually gave for discounting Dr. Bailey's opinion and these arguments ask the Court to reweigh the evidence based on criteria the ALJ did not consider. As Plaintiff himself acknowledges, this would be improper. *See* ECF No. 10 at 7; *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (court is "constrained to review the reasons the ALJ asserts").

### 3. Treating family medicine physician Francis Goodman, M.D.

Dr. Goodman treated Plaintiff from April 2010 to August 2013. AR 431-32, 1115. In November 2012 and January 2013, he submitted evaluations describing Plaintiff's condition and functional limitations. AR 1655-58. He stated that Plaintiff had "frequently recurring kidney stones since age 18," that he had been hospitalized on numerous occasions, and that the condition was permanent. AR 1655-58. He further stated that Plaintiff's latest ultrasound showed numerous stones in each kidney. AR 1655, 1657. He then opined:

> [Plaintiff] can work if he did not have stones. He may pass stones as often as once monthly. Because of numerous sick days because of kidney stones, he cannot hold any ongoing employment. No treatment has helped this and he will likely continue to pass stones in the future.

AR 1658.

The ALJ assigned little weight to Dr. Goodman's evaluations, reasoning that (1) they related to a time period during which Plaintiff did not qualify for benefits (2008 to 2014), (2) they were cursory and not supported by "any meaningful explanation of limitations," and (3) they were not consistent with the rest of the medical evidence. AR 23. Generally, these are appropriate bases for discounting a medical opinion. *Reyes v. Comm'r of Soc. Sec.*, 2019 WL 1865916, at *5 (E.D. Cal. 2019) (when a doctor's opinion concerns a period after the date last insured, it has little bearing on the claimant's alleged period of disability and is properly discounted); 20 C.F.R. § 404.1527(c)(3) ("The more a medical source presents

relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion."); *Thomas*, 278 F.3d at 957; *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004).

The Court notes that Plaintiff's opening brief only addresses the first reason the ALJ gave for discounting Dr. Goodman's opinion. *See* ECF No. 8 at 15. By not addressing all the ALJ's rationales in his opening brief, Plaintiff has waived his challenge to the ALJ's consideration of Dr. Goodman's opinion. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008); *Samuel L. v. Comm'r, Soc. Sec.*, No. 2:18-CV-00358-RHW, ECF No. 12, at 22-27 (E.D. Wash. 2020); *Matthew S. v. Saul*, 4:18-CV-05115-RHW, ECF. No 16, at 12-15 (E.D. Wash. 2019).

But even if he had not waived the issue, Plaintiff nonetheless fails to show that the ALJ's first rationale was improper. Plaintiff was last insured for purposes of Title II benefits in June 2008. AR 15. He did not qualify for Title XVI benefits until he filed his application in November 2014. AR 15. Plaintiff concedes that he does not qualify for benefits from 2008 to 2014, but argues that his kidney stones have been a longstanding problem and that Dr. Goodman's November 2012 and January 2013 opinions are nevertheless an important part of the "longitudinal picture." ECF No. 8 at 15.

However, as the ALJ outlined, the record indicates that Plaintiff's kidney symptoms come and go, with periods of up to six months without any stones. AR 19; *see* AR 455 ("He states he has been doing well over the past six months without any stone[s]."), 878, 1469-70. While it is true that Plaintiff's kidney condition has been longstanding, Dr. Goodman never saw or treated Plaintiff at any point when Plaintiff was eligible for benefits. *See* AR 431-32, 1115. It is not clear, nor does Plaintiff explain, how the ALJ erred by not applying his opinion to time periods that pre and postdate his treatment by years, especially given the waxing and waning nature of Plaintiff's symptoms. *See* AR 1469 (no symptoms in December 2015).

### 4. Non-examining physician Judy Panek, M.D. / ALJ's finding that Plaintiff would miss 8 to 10 days of work per year

In May 2017, internal medicine specialist Dr. Panek reviewed Plaintiff's file and completed interrogatories. AR 1683-87. She agreed that Plaintiff suffered from bilateral recurrent nephrolithiasis. AR 1684. She also believed that he had narcotic pain syndrome. AR 1684. She outlined Plaintiff's many procedures, including lithotripsies, ureteroscopy, multiple extracorporeal shockwave lithotripsies, and multiple cystoscopies with stents. AR 1684. She noted that by September 2016, he had no obstructions and his hydronephrosis had resolved. AR 1684.

Dr. Panek opined that Plaintiff did not meet the criteria for Listing 6.09. AR 1685. She noted that Plaintiff had multiple ER visits and outpatient procedures,

including overnight ER visits in June 2015 and October 2015. AR 1685. However, Listing 6.09 requires three hospitalizations of 48 hours within 12 months, which she noted that Plaintiff did not have. AR 1685.

Dr. Panek concluded that Plaintiff could perform light work with some additional restrictions. AR 1686. With respect to attendance, she noted that Plaintiff's treatment would have required him to miss several days of work in December 2010 and August 2013.[6] AR 1686. Generally, however, she believed he would have missed one day of work per month at times, but less than 12 days total per year. AR 1686.

The ALJ assigned great weight to Dr. Panek's opinion, reasoning that (1) she had great medical expertise, (2) she demonstrated significant familiarity with the Social Security regulations, (3) she reviewed the entire record, (4) she appropriately considered Plaintiff's drug-seeking behavior, and (5) her responses were consistent with the longitudinal medical history, the objective findings, and the other opinions in the record. AR 23. The ALJ ultimately adopted Dr. Panek's opinion that Plaintiff would miss 8 to 10 days of work per year. AR 18.

Plaintiff argues that Dr. Panek is not a nephrologist, that her findings are "somewhat contradictory," and that the outpatient surgery records from fall 2014 show that he would have missed more than one day of work per month. ECF No. 8

---

[6] As discussed above, Plaintiff was ineligible for benefits during this time period.

at 17-19. Again, Plaintiff fails to address all of the ALJ's reasons for crediting Dr. Panek's opinion. *See id.*; *Carmickle*, 533 at 1161 n.2; *Matthew S.*, 4:18-CV-05115-RHW, ECF. No 16 at 12-15. Nevertheless, his contentions lack merit.

While Dr. Panek is not a nephrologist, the issue is whether the ALJ's findings are supported by substantial evidence. The fact that Dr. Panek is a board-certified internist and not a nephrologist does not undermine the ALJ's finding that she had great medical expertise.

Plaintiff also argues that Dr. Panek's observation that he had two overnight hospital visits in 2015 (for purposes of analyzing Listing 6.09) contradicted her later opinion that he would only miss one day of work per month. ECF No. 8 at 18. It did not. In both ER visits, Plaintiff went to the Sacred Heart emergency room late at night for kidney pain. *See* AR 910 ("Arrival Date/Time: 06/09/2015 21:26"), 1415 ("Arrival Date/Time: 10/11/2015 22:00"). At the first visit, he had a urinary tract infection. AR 918. The doctor stated that Plaintiff "did not require admission to the hospital or consultation with a specialist" and he prescribed Plaintiff hydrocodone and an antibiotic. AR 918. At the second ER visit, Plaintiff stated he was in pain but was "unable to take anything" due to not having a primary care physician. AR 1415-16. The provider did not order any imaging and treated him empirically. AR 1421. She administered Dilaudid and prescribed Percocet. AR 1421. At both visits, Plaintiff was discharged a few hours after he

arrived, in the early morning. *See* AR 910 ("Discharge Date/Time: 06/10/2015 02:54), 1415 ("Discharge Date/Time: 10/12/2015 00:47"). Given the very brief and minor nature of these visits, Dr. Panek's observation that Plaintiff technically had two overnight hospital stays did not contradict her opinion that he would only miss one day of work per month.

Finally, Plaintiff cites four outpatient procedures that his urologist performed throughout fall 2014 and argues that these undermine Dr. Panek's opinion that he would only miss one day of work per month. ECF No. 8 at 18-19 (citing AR 661-63, 664-66, 667-69, 670-72). Dr. Panek considered these along with the rest of the medical record, which shows that fall 2014 was an anomaly and Plaintiff rarely had more than one procedure per year and, at most, had a few spaced widely throughout the year. *See* AR 359-373. Substantial evidence supports Dr. Panek's opinion with respect to Plaintiff attendance.

### 5. Non-examining physician Olegario Ignacio, M.D.

Dr. Ignacio reviewed Plaintiff's file in October 2015 and opined that he could perform modified light work. AR 123-26. The ALJ assigned great weight to this opinion, reasoning that it was consistent with both Dr. Panek's opinion and the longitudinal medical evidence. AR 23.

Plaintiff argues that the ALJ should have given Dr. Ignacio's opinion less weight because he did not have the medical records from 2016 or 2017 and also

because he did not explain his findings. ECF No. 8 at 19. Again, Plaintiff does not address the reasons the ALJ actually gave for crediting Dr. Ignacio's opinion and instead asks the Court to reweigh the evidence based on criteria the ALJ did not consider, which would be improper. *See supra* at 15 n.5; *Stout*, 454 F.3d at 1054. But nevertheless, Dr. Ignacio's opinion was consistent with Dr. Panek's, who did have the 2016 and 2017 records. Dr. Ignacio also explained his opinion by outlining Plaintiff's treatment history, surgeries, examination findings, symptoms, and daily activities, which included playing football, riding "his bike all day long," and taking his children swimming. AR 123.

## VIII. Order

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision is supported by substantial evidence and is free from legal error. Accordingly, **IT IS ORDERED**:

1.   Plaintiff's Motion for Summary Judgment, **ECF No. 8**, is **DENIED.**

2.    Defendant's Motion for Summary Judgment, **ECF No. 9**, is **GRANTED.**

///

///

///

///

3. Judgment shall be entered in favor of Defendant and the file shall be **CLOSED**.

**IT IS SO ORDERED.** The District Court Executive is directed to enter this Order, forward copies to counsel, and close the file.

**DATED** this March 24, 2020.

_s/Robert H. Whaley_
ROBERT H. WHALEY
Senior United States District Judge